ELLIS v. AMERICAN MORTGAGE COMPANY.

1. MARRIED WOMEN'S CONTRACTS.—A married woman signed an application for a loan of money, describing the land offered by her as security, and declaring that the broker who negotiated the loan was her agent in procuring it for her; she went to the broker to get the money, and signed notes and mortgage and receipt for the money. *Held* to be proof sufficient that the money was borrowed by the married woman for herself.

2. IBID.—The money being borrowed by the married woman, she had full power to give note and mortgage of her separate estate to secure the repayment of the loan.

Before WALLACE, J., Hampton, October, 1891.

This was an action by N. W. Ellis and others against The

American Mortgage Company of Scotland, Limited, for the cancellation of a mortgage. The only evidence in the case was the application and receipt stated in the opinion, and the testimony of N. W. Ellis, who testified in substance that his wife signed the mortgage, went to the hotel in Hampton for the purpose, but received no part of the money, nor was it expended for her uses, he having received it in checks payable to his order, and used it in paying his debts; that Mrs. Ellis had gone back to the buggy when he received the checks; that there was then no unsatisfied judgment against Mrs. Ellis; that he had made all the arrangements with W. H. Duncan for the money. All testimony of witness, an heir of Mrs. Ellis, as to transactions with Duncan, now deceased, objected to.

The Circuit decree was a merely formal order dismissing the complaint and directing a sale of the property.

*Mr. E. F. Warren,* for appellant.

*Messrs. J. Brown, J. T. Sloan, jr.,* and *W. S. Tillinghast,* contra.

March 31, 1892. The opinion of the court was delivered by

Mr. Justice McGowan. On February 4, 1886, Mrs. Emma B. Ellis, then the wife of N. W. Ellis, made an application to borrow $1,500, and proposed to mortgage a tract of land in Hampton County of 284 acres, very carefully described, and estimated to be worth $4,500, to secure the payment of the proposed loan. Her application was signed by herself, and contained the following statement: "I understand that if this application is negotiated by W. H. Duncan, it will be upon the representations herein contained, which are true in all respects, and are made by me to be used by him as my agent in procuring for me the loan," &c. [Receipt proved:] "March 12, 1886. Received from the Corbin Banking Company fifteen hundred dollars, proceeds of loan negotiated by them for me with American Mortgage Company of Scotland, Limited, less commissions as agreed. (Signed) Emma B. Ellis." In order to secure the said loan of $1,500, Mrs. Ellis, on March 12, 1886, executed an

agreement and mortgage of the tract of land described to the defendant company, which was regularly recorded.

Some time in the summer of 1890, Mrs. Ellis died intestate, and her heirs, including her husband and children, instituted this proceeding to set aside the bond and mortgage and cancel the same, upon the allegation that Mrs. Ellis, the mortgagor, at the time she executed the same, was a *married woman,* and that no part of the money borrowed was ever expended on the mortgaged premises, or any other property belonging to the said Emma B. Ellis. The defendant company answered, that N. W. Ellis, the husband of Emma B. Ellis, managed and controlled the business of said Emma B., as her duly authorized agent, and he never pretended to be acting otherwise; that a considerable portion of said borrowed money was applied by the said Emma B. to the payment of a judgment against the said Emma B. Ellis, on file in the office of the clerk of the court for the county. And answering further, that the said Emma B. Ellis, deceased, in person made application for the loan, and the same was made directly to her on the faith of the note and mortgage aforesaid ; that the condition of the said note and mortgage has been broken, and there is due and owing thereon to the defendant corporation the sum of fifteen hundred dollars, with interest, &c. Wherefore defendant demands, (1) judgment dismissing the complaint; and (2) that the equity of redemption of the mortgaged premises be barred, the premises ordered to be sold, and the proceeds applied to the payment of the amount due on the note and mortgage aforesaid, &c.

It was referred to W. J. Causey, clerk of the court, to take the testimony. Only one witness seems to have been examined, N. W. Ellis, late husband of Emma B. Ellis ; and his testimony was taken subject to the objection of defendant as to any alleged transactions with W. H. Duncan, Ellis being an heir of his deceased wife, and Duncan being dead. The cause came on for a hearing before his honor, Judge Wallace, at the October term of the court, 1891, who, after hearing argument of counsel, dissolved the restraining order previously granted and dismissed the complaint with costs ; and rendered a decree of foreclosure, on the

prayer in the answer of the defendant, ordering the land to be sold on salesday of January, 1892.

From this decree the plaintiffs appeal to this court upon the following exceptions: I. Because his honor erred in deciding that Emma B. Ellis borrowed the money in question from the defendant company. II. Because his honor erred in not deciding that the money in question was borrowed from the defendant company by N. W. Ellis, and that Emma B. Ellis, a married woman, executed the note and mortgage as security for her husband. III. Because his honor erred in deciding in effect that the money in question was a part of the separate estate of Emma B. Ellis, when the same was borrowed by N. W. Ellis, her husband; and she never derived any benefit from the same. IV. Because his honor erred in deciding under the state of facts that Emma B. Ellis, a married woman, had the power to execute the note and mortgage in question, and deciding that the mortgage should be foreclosed and the land sold.

This court, for a number of years, has made earnest efforts to settle the law as to the rights and powers of married women, but there still seems to be some confusion on the subject. The first three exceptions, differing somewhat in form, really make but one question of *fact*. It is insisted that the judge erred in holding that the money was borrowed by Mrs. Emma B. Ellis, and not by her husband, N. W. Ellis. Mrs. Ellis made specific application for the money in writing, describing the property which she proposed to mortgage as security; she came up to Hampton Court House to sign the papers and receive the money; she gave a receipt for the money—all stating that the money was for herself, *going so far as to state in writing that in the transaction Mr. Duncan was her agent*, the name of her husband not being even once mentioned. If this was not sufficient proof that *Mrs. Ellis borrowed the money for herself*, it seems to us that it would be difficult to understand what would be sufficient.

The fourth exception renews the point that it was error to hold that Mrs. Ellis, a married woman, had *the power* to execute the note and mortgage in question for the money borrowed. It cannot be necessary to enter again into the argument as to the constitutional powers allowed to married women.

This court has settled this point at least: "That as to her sepa-
rate property, a married woman has full power to contract, and
may by mortgage or otherwise subject such estate to liability for
the enforcement of such a contract." See *Dial* v. *Agnew*, 28 S.
C., 454; *Greig & Matthews* v. *Smith*, 29 *Id.*, 426; *Fant* v.
*Brown*, *Ibid.*, 598; *Howard* v. *Kitchens*, 31 S. C., 490;
*Schmidt* v. *Dean*, *Ibid.*, 500; and *Law* v. *Lipscomb*, *Ibid.*, 504.

The judgment of this court is, that the judgment of the Cir-
cuit Court be affirmed.